IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRYON K. CHAMP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:19-CV-26-MAB** |
| | ) | |
| **SHIRLEY FORCUM, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>MEMORANDUM AND ORDER</u>

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for partial summary judgment filed by Defendants Shirley Forcum, Kevin Hayman, and Scott Jausel (Doc. 118). For the reasons set forth below, Defendants' motion is DENIED in part and GRANTED in part.

<u>BACKGROUND</u>

Plaintiff Bryon Champ brought this civil rights action pursuant to 42 U.S.C. § 1983 for events that occurred while he was a pretrial detainee at Chester Mental Health Center (hereinafter "Chester") (Docs. 1, 14). Specifically, Plaintiff alleges Defendant Hayman was called over while he was discussing his ongoing legal work with his counselor at Chester (Doc. 14, p. 2; Doc. 118, p. 2). Hayman then made a comment along the lines of "F[***] that legal work," which prompted Plaintiff to respond and "put him in his place, like no f[***] you…" (Doc 118, p. 2; Doc. 118-1, transcript p. 47). Thereafter, Plaintiff was detained by Hayman and Jausel and transported to a room where he was restrained to a bed (Doc. 1, p. 9; Doc. 14, p. 2). During this process, Plaintiff was allegedly pushed into a

wall by Hayman (Doc. 14, p. 2; Doc. 118, p. 3). After Plaintiff was restrained, Hayman allegedly placed his hands around Plaintiff's neck and shoved his chin down to his throat (Doc. 1, p. 4; Doc. 14, p. 2; Doc. 118, pp. 3-4). Jausel was also in the room and failed to intervene (Doc. 14, p. 2).

Over two months later, Plaintiff's access level at Chester was downgraded from green level to red level without a hearing or prior notice (Doc. 14, p. 2). Plaintiff alleges Forcum, then the Unit Director at Chester, ratified the downgrade (Doc. 118, p. 4; Doc. 121, p. 6). Notably, as described in Chester's procedures, patients on all levels are permitted to partake in the following activities: (1) church; (2) dining room; (3) gym; (4) on-unit activities; (5) education; (6) birthday parties; (7) cook-outs; (8) yard; (9) library (Doc. 118-6, p. 2). However, green level patients are also permitted to partake in: (1) inter-unit activities; (2) feature films; (3) game room; (4) fitness room; (5) special monthly activities; (6) increased opportunities for treatment mall activities; (7) eligible to serve on Consumer Advisory Council (*Id.*). Plaintiff also alleges he was only permitted to visit the commissary once per week while on red level (Doc. 14, p. 2). Plaintiff remained on red level for two weeks following the downgrade (*Id.*).

Plaintiff filed suit in January 2019 (Doc. 1). After conducting a preliminary review pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on four counts against Defendants:

**Count 1:** Kevin Hayman and Scott [Jausel] retaliated against Plaintiff for his "legal work" by restraining Plaintiff to his room in violation of the First Amendment.

**Count 2:** Hayman used excessive force against Plaintiff in violation of the

Fourteenth Amendment when he shoved Plaintiff up against the wall and placed his hands around his neck.

**Count 3:** [Jausel] failed to intervene to stop the excessive force used by Hayman in violation of the Fourteenth Amendment.

**Count 4:** Shirley Forcum moved Plaintiff from Green Level to Red Level without prior notification or a hearing in violation of Plaintiff's due process rights.

(Doc. 14, p. 4). In May 2021, the Court granted Plaintiff's motion for counsel (Doc. 80).

Defendants filed their combined partial motion for summary judgment in February 2023 (Doc. 118). The motion seeks summary judgment on Counts I and IV (*Id.*).[1] Plaintiff filed a response in opposition in March 2023 (Doc. 121).

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). When evaluating a motion for summary judgment, the Court's role is not to determine the truth of the matter or choose between conflicting evidence and inferences. *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 836 (7th Cir. 2014). Instead, the Court "must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Id.* However, the non-moving party is still required to produce evidence sufficient to establish the essential elements of

---

[1] In the motion, Defendants concede that there are disputes of material fact which preclude summary judgment on Counts II and III (Doc. 118, p. 2).

his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

**ANALYSIS**

1. *Count I – Plaintiff's Retaliation Claim*

Defendants Hayman and Jausel argue they are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff failed to demonstrate that Defendants retaliated against him because he was conducting legal work (Doc. 118, pp. 6-10). Defendants also argue qualified immunity shields them from liability (*Id.* at pp 13-14). In response, Plaintiff contends the evidence demonstrates that Defendants had knowledge of Plaintiff's legal work and that his legal work was at least a motivating factor in the Defendants' decision to retaliate against him (Doc. 121, pp. 3-5). Plaintiff also argues qualified immunity does not shield the Defendants from liability because access to legal materials and the courts is a clearly established First Amendment right (*Id.* at pp. 8-9).

To establish a prima facie case for retaliation at summary judgment, Plaintiff must demonstrate that: (1) he engaged in an activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take retaliatory action. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). In other words, "to make out a prima facie case for retaliation at summary judgment, [Plaintiff] must produce sufficient evidence to show that his purportedly protected [activity] was at least a motivating factor" in Defendants' alleged retaliatory actions. *Id.*; *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (to demonstrate a causal connection, the

plaintiff must show that the protected activity and adverse action were not wholly unrelated). Additionally, circumstantial evidence such as suspicious timing or ambiguous statements may be relied upon to demonstrate the requisite causal connection in a retaliation claim. *Kidwell*, 679 F.3d at 965; *Jones v. Van Lanen*, 27 F.4th 1280, 1286 (7th Cir. 2022) ("In reaching this conclusion, we recognize full well that circumstantial evidence may be enough to survive summary judgment if that evidence could allow a jury to draw a reasonable inference in support of the non-moving party."). If Plaintiff makes a prima facie showing, the burden then shifts to Defendants to rebut the causal inference by demonstrating that the harm would have occurred anyway. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).

Contrary to Defendants' contentions, the Court finds Plaintiff made a prima facie showing of retaliation. For one, Plaintiff's actions related to accessing his legal materials and performing legal work for his ongoing lawsuits are activities protected by the First Amendment. *See Van Lanen*, 27 F.4th at 1287 ("The right to access the court is fundamental and essential to prisoners' ability to vindicate legal rights."); *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 642-43 (7th Cir. 2013) (helping another individual prepare and file a retaliation suit constituted protected activity as required under the first prong of a retaliation claim). Second, Plaintiff suffered a deprivation when he was allegedly restrained and subjected to excessive force, which leads to the reasonable inference that such actions would deter future First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (a prisoner's transfer to a different facility where he had known enemies was a deprivation, which naturally led to the inference that it would deter future

First Amendment activity); *Hobgood*, 731 F.3d at 643 ("The First Amendment requires a deprivation 'likely' to deter free speech, a standard considered more lenient than the Title VII counterpart of adverse action.").

Consequently, the Court's analysis hinges upon the third element of a retaliation claim – causation. Plaintiff has pointed to several key pieces of evidence to support his argument that his legal work was a motivating factor for Defendants' alleged retaliatory conduct. First, the timing of the alleged retaliation occurred right after Plaintiff's interaction with Hayman regarding his legal work. Accordingly, even if Hayman did not previously know of Plaintiff's legal work, the record demonstrates that he discussed and had knowledge of Plaintiff's legal work before taking the alleged retaliatory actions (Doc. 118, p. 2, Doc. 118-1, transcript pp. 46-47). Second, Hayman allegedly made a critical and arguably inflammatory statement which conveyed his negative feelings about Plaintiff's legal work (Doc. 118, p. 2). This statement towards Plaintiff and his protected activity supports the inference that Plaintiff's legal work was a motivating factor for Defendants' retaliatory actions. Finally, Plaintiff also provided some evidence demonstrating that Hayman was involved in the decision to regulate how much legal work Plaintiff could take at one time (Doc. 118-1, transcript pp. 45-56). While each individual piece of circumstantial evidence would likely be insufficient on its own, when considered together, Plaintiff's evidence could allow a jury to draw a reasonable inference that Defendants' actions were made in retaliation for Plaintiff's legal work. *See Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 669 (7th Cir. 2005) (to survive a motion for summary judgment, the plaintiff was required to present evidence

which could allow the jury to "connect the dots" between the protected activity and the alleged retaliatory actions); *Gomez*, 680 F.3d at 866 ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." (quoting *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987))).

Consequently, the burden shifted to Defendants to rebut the causal inference by demonstrating that the harm would have occurred anyway. *Greene*, 660 F.3d at 979. Significantly, none of Defendants' arguments demonstrate that the harm would have occurred anyway. *Id.* at 980. Defendants first point to Plaintiff's statement that he filed suit because Defendants attacked patients and not because Defendants retaliated against him (Doc. 118-1, transcript p. 64; Doc. 118, p. 8). This argument misses the mark because the ultimate question is whether Defendants' actions were made in retaliation for Plaintiff's legal work, not why Plaintiff decided to file suit against Defendants. Next, Defendants claim the retaliatory conduct would have occurred regardless of whether Plaintiff was engaged in First Amendment activities (Doc. 118, p. 9). Defendants further claim that Plaintiff's placement in restraints was approved by a physician (*Id.*). However, neither claim demonstrates that the retaliatory conduct would have occurred *regardless* of Plaintiff engaging in a protected activity. Defendants have pointed to no evidence that Plaintiff was otherwise acting threateningly or in such a manner that would warrant physical force and restraint against him. Conclusory allegations that Plaintiff was restrained for the "safety and security of the facility," without any further explanation whatsoever, simply do not rebut Plaintiff's causal inference (Doc. 118, pp. 9-10).

Defendants also argue that they are entitled to qualified immunity on Plaintiff's retaliation claim because their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known (Doc. 118, p. 13). *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In response, Plaintiff argues Defendants are not entitled to qualified immunity based upon the facts alleged and Defendants' attempts to raise such a defense now are untimely (Doc. 121, pp. 7-8).[2]

Courts conduct a two-part inquiry to determine whether an official is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). One prong requires courts to consider whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. Meanwhile, the second prong requires courts to consider whether the right alleged to have been violated was clearly established. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that the two prongs in *Saucier* do not need to be analyzed in order). Qualified immunity applies unless there is an affirmative answer to both inquiries. *Pearson*, 555 U.S. at 232-233.

Here, taken in the light most favorable to Plaintiff, the facts alleged demonstrate that Hayman and Jausel's conduct violated Plaintiff's First Amendment right to access the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004); *Wilson v. Gaetz*, 700 Fed. Appx. 540, 542 (7th Cir. 2017) (unpublished).

---

[2] The Court understands Plaintiff's frustration with Defendants' decision to raise a qualified immunity defense several years into litigation. *See Saucier*, 533 U.S. at 200-01 (stating that a qualified immunity defense should be raised at the earliest possible stage in litigation). However, the Court does not address Plaintiff's timeliness argument further because this Order does not rely upon qualified immunity under either claim.

Furthermore, that the right to access the courts (and be free from retaliation for doing so) was clearly established at the time of Defendants' alleged actions, such that a reasonable officer would have known of the right. *See, e.g.*, *Bounds*, 430 U.S. at 821; *Harlow*, 457 U.S. at 818; *Carter v. Radtke,* 2014 WL 5494679, at *21 (W.D. Wis. Oct. 30, 2014) ("[T]he First Amendment rights of prisoners to send outgoing mail *was* clearly established at the time Carter alleges defendants had no legitimate reason for screening his mail, censoring it, and subjecting him to disciplinary actions based on its content."). Accordingly, Hayman and Jausel are not entitled to qualified immunity on Plaintiff's retaliation claim.

For these reasons, Defendants' motion for summary judgment on Plaintiff's retaliation claim is DENIED.

2. *Count IV – Plaintiff's Due Process Claim*

Defendant Forcum argues she is entitled to summary judgment on Plaintiff's due process claim for two key reasons. First, Forcum contends that she cannot be held liable for any alleged due process violation because she lacked personal involvement in the alleged constitutional violation (Doc. 118, pp. 10-12). Second, Forcum argues that Plaintiff's due process rights were not violated by downgrading him from green to red level without a hearing (*Id.* at pp. 12-13). In response, Plaintiff claims that Forcum ratified the downgrade and he had a due process right to be notified of any level downgrade (Doc. 121, pp. 5-7). Ultimately, the Court finds Defendant Forcum's second argument to be dispositive.

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520,

535 (1979). Consequently, when examining deprivations that occurred without due process of law, a critical question is whether the conditions or restrictions imposed upon the pretrial detainee amounted to punishment. *Id.* Significantly, "[t]o establish a right to due process, a pretrial detainee must demonstrate either 1) an 'expressed intent to punish on the part of detention facility officials' or 2) that the challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose." *Love v. Kirk*, 360 Fed. Appx. 651, 653 (7th Cir. 2010) (unpublished) (quoting *Bell*, 441 U.S. at 538-39).

Crucially, however, downgrading Plaintiff from green to red level does not implicate the Due Process Clause. "In order to state a procedural due process claim under the Fourteenth Amendment, Plaintiff must show that the state deprived him of a constitutionally protected interest in 'life, liberty, or property' without due process of law." *Reed v. Dye*, 2019 WL 3739502, at *3 (S.D. Ill. Aug. 8, 2019) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Here, Plaintiff only alleges that he lost the ability to partake in additional privileges such as: (1) inter-unit activities; (2) feature films; (3) game room; (4) fitness room; (5) special monthly activities; (6) increased opportunities for treatment mall activities; (7) eligible to serve on Consumer Advisory Council (Doc. 121, p. 5; Doc. 118-6, p. 2); and the ability to more frequently access the commissary (Doc. 14, p. 2). Losing the ability to partake in these privileges still left Plaintiff with the ability to partake in all the baseline functions available at Chester. Notably, "the right to due process is triggered only when a protected interest is at stake." *Reed*, 2019 WL 3739502 at *3. Plaintiff has not cited to any caselaw which holds that any of the above privileges

constitute a protected interest. *See Bell*, 441 U.S. at 537 ("Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, however.").

To the contrary, numerous cases have held that the loss of similar privileges did not implicate due process. For example, in *Moore v. Pemberton*, a plaintiff sued for damages after he was verbally reprimanded and prevented from buying snacks at the commissary for two weeks. 110 F.3d 22, 23 (7th Cir. 1997). In addition to finding his suit to be malicious, the Seventh Circuit held the plaintiff did not lose any liberty or property based upon his allegations, "so the due process clause simply does not apply." *Id.* Similarly, in *Thomas v. Ramos*, the Seventh Circuit stated that the plaintiff did "not have a protectible liberty interest in his demotion to C-grade status and loss of commissary privileges." 130 F.3d 754, 762 (7th Cir. 1997). Likewise, in *Barichello v. McDonald*, the Seventh Circuit found that the elimination of a pass program for mental patients did not constitute punishment without an adjudication of guilt in violation of *Bell* because it did not constitute punishment at all and did not serve a punitive purpose. 98 F.3d 948, 954 (7th Cir. 1996); *see also Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1089 (7th Cir.1986) (holding reasonable restrictions on outdoor recreation did not constitute punishment). Here, Plaintiff's due process claim necessary fails because he did not have a protectible interest in any of the privileges. Therefore, Defendant Forcum's motion for summary judgment as to Count IV is granted.

Additionally, even if Plaintiff's level downgrade had constituted punishment, he has altogether failed to demonstrate an expressed intent to punish by Forcum or that the

challenged condition or restriction lacked a reasonable relationship to a legitimate, non-punitive administrative purpose. *Bell*, 441 U.S. at 538-39. By Plaintiff's own admissions, Forcum was not directly involved in the downgrade and at most, reviewed the downgrade after it occurred (Doc. 121, p. 6). Tellingly, Plaintiff has not alleged a direct intent to punish by Forcum. Moreover, the sheet presented to Forcum indicated that Plaintiff's level was downgraded for safety concerns following a verbal altercation and Plaintiff's flashing of gang signs (Doc. 118-5, transcript pp. 35-39). Accordingly, downgrading Plaintiff was reasonable and proportionate to Chester's goal of reinforcing adaptive social behaviors and managing risks posed by aggressive acts and maladaptive behaviors (Doc. 118-6, p. 1).[3] *See Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (holding that a pretrial detainee can be placed in segregation without any process so long as the placement was for managerial reasons like safety and not for punitive reasons).

Consequently, Defendants' motion for summary judgment on Plaintiff's due process claim is GRANTED.

## CONCLUSION

Defendants' partial motion for summary judgment is **DENIED in part** and **GRANTED in part.** Defendants' motion for summary judgment on Plaintiff's retaliation claim is **DENIED**. Defendants' motion for summary judgment on Plaintiff's due process

---

[3] Plaintiff also contends that Forcum could be liable for the actions of her subordinates. However, to be liable under § 1983 for the conduct of her subordinates, "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th Cir. 1988)). However, as outlined above, this theory is a nonstarter because Plaintiff cannot establish that the level downgrade he received violated the Constitution.

claim against Defendant Forcum is **GRANTED** and Defendant Forcum is **DISMISSED with prejudice** as a Defendant in this lawsuit. Judgement will be entered against Plaintiff Bryon Champ and in favor of Defendant Forcum at the conclusion of this case.

This matter will proceed to trial on Plaintiff's retaliation claim against Defendants Hayman and Jausel, as well as Plaintiff's two other claims against Defendants Hayman and Jausel that were not challenged in Defendants' partial motion for summary judgment.

A status conference will be set by separate order at which time the Court intends to discuss the referral of this case for a settlement conference or mediation as well as trial scheduling.

**IT IS SO ORDERED.**

**DATED:  September 11, 2023**

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**